

\*1055102708\*

FILED
MARIE HIRST COURT CLERK
CANADIAN COUNTY, OKLAHOMA

MAR 15 2023

BY_____
DEPUTY

IN THE DISTRICT COURT OF CANADIAN COUNTY
STATE OF OKLAHOMA

**MARIE L GIBSON**, Administrator of the ESTATE )
of **RAYMOND C. ANDERSON**, Deceased, )
)
Plaintiff, )
)
vs. )   Case No. CJ-2023-180
)
1) **STONEGATE SENIOR LIVING, LLC** (Mgmt. Co.) )
2) **PF SOUTH YUKON SNF OPS, LLC** dba )
  **RANCHWOOD NURSING CENTER** (Licensee; )
3) **JOHN F. TAYLOR** (Owner/Manager); )
4) **JOHN P. TAYLOR** (Owner/Manager); )
5) **SANCTUARY LTC, LLC** (Owner/Operator); )
6) **JAMES M. CHANCE** (Owners/Manager) )
)
Defendants. )

# PAUL HESSE

## PLAINTIFF'S PETITION

COMES NOW, Plaintiff and on behalf of all wrongful death survivors, for Plaintiff's

cause of action against Defendants, would show as follows:

## PARTIES AND COMMON ALLEGATIONS

1.    **Decedent:**  Raymond C. Anderson was a resident at Ranchwood Nursing

Center located in Yukon, Oklahoma from approximately October 31, 2022 to November 24,

2022. (24 days) As a consequence of the wrongful conduct complained of herein Raymond C.

Anderson died 4 days later on November 28, 2022.

2.    **Plaintiff:**  Marie L. Gibson, Administrator of the Estate of Raymond C.

Anderson, brings this action on behalf of all wrongful death survivors of the Decedent pursuant

to: a) Oklahoma Survivor Statutes, OKLA. STAT. tit. 12, § 1051; and, b) Oklahoma Wrongful

Death Statutes, OKLA. STAT. tit. 12, § 1053.

3.     **Defendant, PF SOUTH YUKON SNF OPS, LLC** is a for profit limited liability company which at times material owned and conducted business as a nursing facility licensed under the laws of the state of Oklahoma, known as Ranchwood Nursing Center.

1.     **Defendant Sanctuary LTC, LLC** is a for profit corporation which, under the direction and control of its owners and managers, Defendants John F. Taylor, John P. Taylor, and James M. Chance manages and directs the day-to-day operations of the other Defendants. At all times material to this lawsuit, said Defendant did business in the state of Oklahoma owning, operating, managing, and/or maintaining nursing homes and nursing facilities, including the defendant nursing home sued here. including but not limited to final say so regarding staffing at the defendant nursing home.  This Defendant, through his operation and manipulation of the corporate defendants and staffing edicts, was directly responsible for the care and treatment received by Decedent.  Suit is brought against said group in its assumed or common name.

2.     **Defendant, Stonegate Senior Living, LLC**, is a for profit domestic limited liability company which, under the direction and control of its owners and managers, Defendants John F. Taylor and John P. Taylor, manages and directs the day-to-day operations of the other Defendants, including but not limited to final say so regarding staffing at the defendant nursing home.  At all times material to this lawsuit, said Defendant did business in the state of Oklahoma owning, operating, managing, and/or maintaining nursing homes and nursing facilities, including the defendant nursing home sued here.  Suit is brought against said group in its assumed or common name.

3.     **Defendant, John F. Taylor**, is being sued for his own conduct, act, or contractual obligation, not within the scope of his role as an officer, director, or shareholder,

2

arising out of or in connection with their direct involvement in the same or related transaction or occurrences dealing with his direct participation in the daily operations and management of PF South Yukon SNF OPS, LLC; Stonegate Senior Living, LLC; and Sanctuary LTC, LLC. Defendant is involved in and responsible for the day-to-day operations of the other Defendants, including but not limited to final say so regarding staffing at the defendant nursing home. This Defendant, through his operation and manipulation of the corporate defendants and staffing edicts, was directly responsible for the care and treatment received by Decedent.

4.    **Defendant, John P. Taylor,** is being sued for his own conduct, act, or contractual obligation, not within the scope of his role as an officer, director, or shareholder, arising out of or in connection with their direct involvement in the same or related transaction or occurrences dealing with his direct participation in the daily operations and management of PF South Yukon SNF OPS, LLC; Stonegate Senior Living, LLC; and Sanctuary LTC, LLC. Defendant is involved in and responsible for the day-to-day operations of the other Defendants, including but not limited to final say so regarding staffing at the defendant nursing home. This Defendant, through his operation and manipulation of the corporate defendants and staffing edicts, was directly responsible for the care and treatment received by Decedent.

5.    **Defendant, James M. Chance,** is being sued for his own conduct, act, or contractual obligation, not within the scope of his role as an officer, director, or shareholder, arising out of or in connection with their direct involvement in the same or related transaction or occurrences dealing with his direct participation in the daily operations and management of PF South Yukon SNF OPS, LLC; Stonegate Senior Living, LLC; and Sanctuary LTC, LLC. Defendant is involved in and responsible for the day-to-day operations of the other Defendants, including but not limited to final say so regarding staffing at the defendant nursing home. This

3

Defendant, through his operation and manipulation of the corporate defendants and staffing edicts, was directly responsible for the care and treatment received by Decedent.

## DEFINITIONS

8.      Whenever the term "**Defendants**" is utilized within this Petition, such term collectively refers to, and includes all named Defendants in this lawsuit, unless specifically restricted within a cause of action set forth below.

9.      Oklahoma law recognizes a **Joint Venture or Enterprise** where the parties alleged to be partners in such venture or enterprise share a common interest in the property or activity or the joint venture; maintain agreements, either express or implied, to share in profits or losses of the venture or enterprise; and express actions or conduct showing cooperation in the project of the venture or enterprise.

10.     As further described below, Plaintiff alleges that **Defendants** share a common interest in the operation and management of nursing facilities; maintain agreements to share in the profits or losses of the operation of nursing facilities described herein; and operate on a daily basis evincing conduct which indicates their cooperation in the venture of operating and managing nursing facilities.

11.     As described in detail below, Plaintiff alleges that each Defendant took direct, overt and specific actions, either as the individual, through a joint venture or enterprise, through their employees, in directing and managing the day-to-day operations of the other Defendants to such an extent that these overt actions significantly manipulated the resources available for resident care and substantially affected and manipulated the standard of care provided to each resident of the subject nursing home, including staffing.

4

12.     Under Oklahoma law, a corporation or other recognized entity, including a joint venture or enterprise, can only act through its officers, employees, agents and servants. Any act or omission of an officer or employee while acting within the scope of her or her employment or authority constitutes an act or omission of the corporation. Accordingly, and alternatively to the allegations described above, Plaintiff invokes the doctrine of *respondeat superior*. Whenever in the petition it is alleged that any *Defendant or* engaged in any act or omission or had a requisite level of knowledge, such reference shall mean that the officers, agents, servants, representatives, and/or employees who were: (a) employed by any Defendant; (b) under the control of any Defendant, whether formally employed by or not; and, (d) acting in the course and scope of their relationship with any Defendant, whether an employment relationship or other agency relationship, engaged in the act or omission or had the requisite level of knowledge.

13.     Further, as detailed below, Plaintiff asserts that, in the alternative to the above delineated claims, **Defendants** acted or comprise the alter ego of the other **Defendants** such that formalities of organizational structure should be disregarded.

## SUMMARY OF THE CASE

14.     This is a case about the substandard care received by Plaintiff's decedent at the nursing home known as Ranchwood Nursing Center, owned and operated by all defendants. Such nursing home was owned, operated and managed in such a way as to increase their occupancy rates by targeting and recruiting high acuity, high rate of pay patients; even though such patients' needs were well beyond the care capabilities of the nursing homes' staff and the operations of all Defendants.

15.     Compounding the danger, **Defendants** consciously chose not to implement safety policies, procedures and systems which would ensure that: (a) the acuity levels and

needs of residents were consistent with the numbers and qualifications of direct caregivers; and (b) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

16.     Accordingly, **Defendants**, by their operational choices and decision making, and in order to satisfy their desire to grow profits, created a dangerous condition that caused harm to residents. These choices to establish and implement such policies and the conscious decision not to implement corrective actions or procedures were in direct opposition to and superseded and disregarded the duties which the state of Oklahoma imposed upon the Defendants.

17.     **Defendants**, individually and together, manipulated the resources at the subject nursing home and failed to provide the required amount of staff in the facility to such an extent that the facility was not in compliance with the laws and regulations establishing such staffing levels. Because the staff was below necessary levels, the residents, including Decedent failed to receive even the most basic care required to prevent catastrophic injury.

18.     Defendants failed to follow accepted standards of nursing care in regards to, but not limited to;

    a. the prevention and treatment of pressure ulcers,
    b. sepsis,
    c. hyperkalemia,
    d. malnutrition,
    e. dehydration
    f. disfigurement,
    g. loss of dignity and quality of life,
    h. pain and suffering,
    i. DEATH.

19.     **Defendants** manipulated the resources in their facilities and/or in their joint venture or enterprise, and failed to provide the required amount, and quality, of staff in the

facility, to such an extent that the facility was not in compliance with the laws and regulations establishing such staffing levels. Because the staffing was below necessary levels, and because the staff that were present were not properly qualified or trained, the residents, including Decedent, failed to receive even the most basic care required to prevent catastrophic injury.

20.     During Decedent's stay at Ranchwood Nursing Center, **Defendants** herein negligently rendered medical and nursing treatment below acceptable medical and nursing standards, causing Decedent to experience:

> a. the prevention and treatment of pressure ulcers,
> b. sepsis,
> c. hyperkalemia,
> d. malnutrition,
> e. dehydration
> f. disfigurement,
> g. loss of dignity and quality of life,
> h. pain and suffering,
> i. DEATH.

21.     During Decedent's residency at the defendant nursing home, Decedent sustained injuries and died as a result of the acts, omissions, decisions and choices made by the **Defendants** in operating the facilities and manipulating the available resources, which from the circumstances within the facilities which were under their direct operation and management. The events causing Decedent's injuries and death were of a kind which ordinarily do not occur in the absence of negligence on the part of these Defendants.

22.     During Decedent's residency at the defendant nursing home, **Defendants** negligently failed to provide and/or hire, supervise and/or retain staff capable of providing Decedent with a clean, safe and protective environment, and that, as a result of their failure, Decedent suffered neglect, abuse, severe personal injuries, conscious pain and suffering,

deterioration of physical condition, and deterioration of quality of life. Ultimately, Decedent died as a result of their failure.

23.     During Decedent's residency at **Defendant nursing home**, the Defendants violated the rights of Decedent as set forth in the Oklahoma Nursing Home Care Act, tit. 63 O.S. §1-1901, et seq., and, as a result, Decedent suffered the injuries and death discussed above.

24.     At all times material hereto, **Defendants** had the responsibility to provide nursing home services and medical needs to Decedent. Defendants, however, failed or neglected to provide such services in accord with standard nursing home practices. These Defendants further failed or neglected to provide such services in accord with applicable state and federal regulations.

25.     **Defendants, including John F. Taylor, John P. Taylor** and **James Chance** manage, operate and direct the day-to-day operations of **Defendant nursing home** and these Defendants are liable for their direct involvement in the operations of such facility. These Defendants are therefore liable to the Plaintiff for the neglect of, injuries to and death of Decedent.

## THE PROFOUND NEGLECT OF DECEDENT

26.     Staff and caregivers of **Defendant nursing home** failed to follow accepted standards of nursing care in regard to, but not limited to: disfigurement, loss of dignity and quality of life, pain, suffering, provision and management of safety, failure to advocate in regards to dignity, and failures to follow appropriate and adequate nursing standards of care in regards to actual and potential needs. In addition to these failures as listed above; the

Defendants fully understood the consequences of failing to provide such routine services in accordance with fundamental standards of care.

28.     By reason of Decedent's needs and degree of dependency upon the nursing home, Defendants:

a.     fully understood their duties and responsibilities in providing Decedent with the above essential services and the importance of such care in promoting his recovery to his prior state of health and homeostasis; and

b.     fully understood the consequences of choosing not, and failing to provide such routine services in accordance with fundamental standard of care.

29.     Moreover, by reason of Defendants' experience and background in nursing home care, said Defendants were acutely aware that the routine failure to provide the kind of basic and necessary care required by Decedent could jeopardize the health and life of such a resident, cause pain, disfigurement, physical, mental, emotional decline and premature death.

## DEFENDANTS' DIRECT PARTICIPATION

30.     **Defendants** were at all times material to this lawsuit in the business of managing, owning and operating a network of nursing homes throughout the State of Oklahoma, including Defendant nursing home.

31.     At all times material to this lawsuit, all Defendants were fully aware that the delivery of essential care services in each of their nursing homes hinged upon three fundamental fiscal and operational policies which were dictated by their choices on establishing and implementing such policies:

a.   the determination of the numbers and expenditures on staffing levels;

b.   the determination of the census levels within the nursing home; and,

c.   payor mix.

9

32.     Further, at all times material, Defendants made critical operational decisions and choices which controlled and directly impacted Defendant nursing home's revenues and expenditures.  More particularly, Defendants determined and controlled: the number of staff allowed to work in their nursing homes; the expenditures for staffing at the nursing homes; the revenue targets for each nursing home; the payor mix; and, census targets for each nursing home, as well as the patient recruitment programs and discharge practices at each nursing home. In sum, at all material times, all cash management functions, revenues and expenditure decisions at the nursing home level were tightly managed, directed, supervised and controlled by the Defendants. It was the choices made by the Defendants which directly fixed the circumstances in the facilities and the level of care that could, and was, provided at the homes. This was the case at Defendant nursing home.

33.     The census edicts, aggressive marketing and admission practices, and resident discharge policies designed and mandated by the Defendants were brutally implemented and such application was carefully supervised and enforced. Following the mandates, **Defendant nursing home** functioned in accordance within them, filling empty beds, recruiting high acuity patients, and maintaining a census level and staffing level established and enforced as Defendants deemed appropriate.

34.     Accordingly, such manipulation by Defendants as to staffing and census were motivated by the financial needs of the companies as opposed to the acuity levels and needs of the residents as dictated by state and federal laws and regulations.  Instead of abiding or even acknowledging their duty to care for the residents, Defendants chose to be guided by financial motivation which was simply to increase revenues while restricting and/or reducing expenses.

35.     Defendants, therefore, directly participated in a continuing course of negligent conduct, requiring Defendant nursing home to recruit and retain heavier care, higher pay residents to the facility even though the needs of the patient population far exceeded the capacity of staff. At the same time, Defendants chose to design, create, implement and enforce dangerous operational budgets at **Defendant nursing home** which dictated the level of care that could be provided and therefore deprived residents of widespread neglect. In so doing, Defendants disregarded, superseded, and violated the duties and responsibilities imposed on a licensed nursing home, in this case Defendant nursing home, by the State of Oklahoma.

36.     Defendants maintain a contractual relationship with the state of Oklahoma and federal government. Such contract includes an obligation on Defendants' part to provide resident care in compliance with all state and federal laws and regulations, in exchange for payment from those such governmental agencies. Failure of that facility to operate in a manner consistent with the laws and regulations established by the State of Oklahoma constitute a breach of that obligation on the part of Defendants, individually and as manager and owner or operator of Defendant nursing home as well as a breach by Defendant nursing home themselves.

## THE LEGAL BASIS FOR DEFENDANTS' LIABILITY

37.     **Defendants** are sued for their direct participation in the torts and causes of action made the basis of this lawsuit, having:   (a) chosen to disregard the duties and responsibilities which Defendant nursing home, as licensed nursing homes, owed to the State of Oklahoma and its residents; (b) created the dangerous conditions described by interfering with and causing Defendant nursing home to violate Oklahoma statutes, laws and minimum regulations governing the operation of said nursing home; (c) superseding the statutory rights

11

and duties owed to nursing home residents by designing and mandating dangerous directives, policies, management and day to day operation of Defendant nursing home; (d) caused the harm complained of herein; and (e) choosing to disregard the contractual obligations owed to the State of Oklahoma and the Federal Government to properly care for the residents in exchange for payment of funds for such care.

38.     **Defendant nursing home is** sued in its capacity as a licensed nursing home for: (a) violations of state laws and regulations governing the provision of care to nursing home residents; and (b) failure to exercise ordinary care as a licensed nursing home to guard against injury. Additionally, and in the alternative, pursuant to the Oklahoma Nursing Home Care Act, OKLA. STAT. tit. 63, §§ 1-1939 and 1-1902(16), **Defendants** are sued in their capacity as an "owner" for the negligent acts or omissions which caused the death of Decedent.

39.     In addition to being legally responsible for the wrongful acts detailed above as a direct participant, Plaintiff pleads in the alternative that **Defendants** are also indirectly and vicariously liable and responsible for each and every tort and cause of action stated within this Petition and the resultant damages. More specifically, **Defendants** are vicariously liable and responsible for the wrongful conduct detailed above and below under the alternative legal theories: Agency, Joint Enterprise, and Alter Ego.

## COUNT ONE: ORDINARY NEGLIGENCE

40.     Plaintiff re-alleges and incorporates the allegations above as if fully set forth herein.

41.     All Defendants owed a duty to their residents, including Decedent to: (a) exercise ordinary care and attention required under all circumstances that was appropriate to the mental and physical condition of the resident; and (b) supervise the care rendered at the

nursing home to ensure that such care was consistent with established and recognized medical practice standards within the community and minimum professional standards of care.

42.     Furthermore, Defendants owed a specific duty to comply with those minimum rules and regulations as detailed in *Count Three: Negligence Per Se for Violation of Nursing Home Regulations Imposed by Statute* below. Insomuch as these regulations establish and are probative of the standard of care and the duties owed by **Defendant nursing home** to Decedent, they are incorporated herein.

43.     Defendants repeatedly breached the aforementioned duties and corresponding contractual obligations and engaged in negligence by:

a.     Failing to provide a nursing staff that was sufficient in number, properly qualified and trained to meet the needs of residents including Decedent;

b.     Failing to provide nursing personnel sufficient in number and qualifications to ensure that the treatment and care needs of residents were met and that Decedent was appropriately monitored and assessed;

c.     Failing to provide services by sufficient number of nursing personnel on a 24-hour basis to provide nursing care to all residents, including Decedent, in accordance with the individualized care plan of each specific resident;

d.     Failing to create and/or follow an individualized care plan of the daily nursing care required by Decedent based on his specific condition and needs;

e.     Failing to provide Decedent with proper assessment, supervision and safety precautions to prevent the occurrence of falls;

f.     Failing to adequately hire, train supervise and retain a sufficient amount of competent and qualified registered nurses, licensed vocational nurses, nurse assistants and other personnel in said facility to assure that Decedent received care, treatment, and services in accordance with State regulations and minimum professional standards;

g.     Failing to provide adequate supervision to the nursing staff so as to ensure that Decedent received sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of Decedent;

h.     Failing to provide goods or services necessary to avoid physical harm or mental anguish to Decedent;

i.     Failing to adopt and enforce policies and procedures necessary to avoid injury to residents;

j.     Continuing failure to establish and implement appropriate safety, training, staffing, and fundamental nursing care policies to prevent harm to residents and avoid the known consequences of inadequate care;

k.     Failure to adequately evaluate, and supervise nursing personnel so as to ensure that Decedent received appropriate nursing care, in accordance with Defendants' policy and procedure manuals and corresponding regulations implemented expressly pursuant thereto by the Oklahoma State Department of Health and its agents;

l.     Failing to adopt adequate guidelines, policies, and procedures for documenting, maintaining files, investigating, and responding to any incident or complaint regarding the quantity of resident care, the quality of patient or resident care, or misconduct by Defendants' employees, irrespective of whether such complaint derived from a state or federal survey agency, a resident of said facilities, an employee of said facilities or any interested person;

m.     Failing to establish and implement appropriate budgeting policies that were consistent with the needs of residents, which **Defendant nursing home had** accepted and promised to care for, in accordance with the minimum standards of care, Oklahoma Nursing Home Care Act, OKLA. STAT. tit. 63, § 1-1901, *et seq.*, and regulations promulgated under such statute;

n.     Failing to ensure that the rules and regulations designed to protect the health and safety of the residents, such as Decedent, as promulgated by the Oklahoma Legislature in the Nursing Home Care Act and corresponding regulations implemented expressly pursuant thereto by the Oklahoma State Department of Health and its agents, were consistently complied with on an ongoing basis;

o.     Failing to ensure that Decedent's clinical record was created and maintained in accordance with professional standards of care;

p.     Suppressing and concealing the ongoing neglect of Decedent;

q.     Failing to responsibly ensure that appropriate corrective measures were implemented to correct problems concerning inadequate resident care and take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

44.     Decedent's injuries, pain, suffering and death were a direct and proximate result of the acts or omissions set forth above, of all Defendants operating singularly or in combination. Furthermore, Plaintiff would show that such wrongful acts or omissions set forth above, operating singularly or in combination, were direct and proximate causes of the damages described more fully herein.

WHEREFORE, Plaintiff seeks compensatory, actual and punitive damages described below, which are incorporated herein for purposes of this *Count*, plus cost of suit, and all other relief to which Plaintiff is entitled by law.

## COUNT TWO:  STATUTORY VIOLATION OF ENUMERATED RIGHTS AND NEGLIGENCE *PER SE* UNDER THE NURSING HOME CARE ACT

45.     Plaintiff re-alleges and incorporates the allegations above as if fully set forth herein.

46.     At all times material to this lawsuit, **Defendant nursing home** was under a continuing duty to ensure that their staff was familiar with and complied with all resident rights and duties established under the Nursing Home Care Act, OKLA. STAT. tit. 63, § 1-1901, *et seq.*

47.     More particularly, Defendants caused injury and death of Decedent by violating the following express rights of Decedent, including but not limited to:

a.     violating Decedent's right to receive adequate and appropriate medical care consistent with established and recognized medical practice standards within the community as established under OKLA. STAT. tit. 63, § 1-1918(B)(5);

b.     violating Decedent's right established under OKLA. STAT. tit. 63, § 1-1918(B)(12) to be free from neglect and mental abuse;

c.     violating Decedent's right pursuant to OKLA. STAT. tit. 63, § 1-1918(B)(7) to receive services with reasonable accommodation of the individual needs of Decedent; and

15

    d.    interfering with Decedent's right to be fully informed by his attending physician of his medical condition as established also under OKLA. STAT. tit. 63, § 1-1918(B)(5).

48.    Additionally, Defendants violated their duties owed to Decedent under OKLA. STAT. tit. 63, § 1-1918(D) by failing to provide appropriate staff training to implement the rights set forth above.

49.    The above violations, operating singularly and in combination caused injury and death of Decedent. Accordingly, Plaintiff invokes the provisions of OKLA. STAT. tit. 63, § 1-1918(F) seeking all damages recoverable and allowed by law.

50.    Furthermore, Defendants engaged in acts and omissions which constitute statutory "neglect" within the meaning of: (a) OKLA. STAT. tit. 63, § 1-1902(15) which defines "neglect" to mean the failure to provide goods and/or services necessary to avoid physical harm, mental anguish or mental illness; and (b) OKLA. STAT. tit. 43A, § 10-103(11) which defines "neglect" to mean: (1) the failure to provide protection for a vulnerable adult who is unable to protect his or his own interest; (2) the failure to provide a vulnerable adult with adequate shelter, nutrition, health care, or clothing; or (3) negligent acts or omissions that result in harm or the unreasonable risk of harm to a vulnerable adult through the action, inaction, or lack of supervision by a caretaker providing direct services.

51.    By reason of the fact that Defendants' intentional or negligent acts or omissions caused injury and death of Decedent, said Defendants are also liable pursuant to the Nursing Home Care Act, OKLA. STAT. tit. 63, § 1-1939(A) and (B). Plaintiff seeks all damages recoverable and allowed by law under the foregoing statutory provision.

52.    In accordance with OKLA. STAT. tit. 63, §1-1902(16), the owner of a nursing home is defined as follows:

"Owner" means a person, corporation, partnership, association, or other entity which owns a facility or leases a facility. The person or entity that stands to profit or loss as a result of the financial success or failure of the operation shall be presumed to be the owner of the facility.

53.    Accordingly, Decedent's injuries, pain, suffering and death were a direct and proximate result of such statutory violations and negligence *per se* set forth above, operating singularly or in combination.  Furthermore, Plaintiff would show that such statutory violations and negligence *per se* set forth above, operating singularly or in combination, were direct and proximate causes of the damages described more fully herein.

WHEREFORE, Plaintiff seeks compensatory, actual and punitive damages described below, which are incorporated herein for purposes of this *Count*, plus cost of suit, and all other relief to which Plaintiff is entitled by law.

## COUNT THREE:  NEGLIGENCE *PER SE* FOR VIOLATION OF NURSING HOME REGULATIONS IMPOSED BY STATUTE

54.    Plaintiff re-alleges and incorporates the allegations above as if fully set forth herein.

55.    At all times material to this lawsuit, **Defendants** : (a) held a "license "to operate the defendant "nursing facility" and, (b) certified that it was licensed under the provisions of OKLA. STAT. tit. 63, § 1-1901, *et seq*. and "certified" as a "long term care facility" under the provisions of Title 63, Oklahoma Statutes.

56.    Furthermore, at all times material to this lawsuit, **Defendants** contracted to: (a) operate and provide required services to residents of its nursing home in compliance with all applicable state laws, rules and regulations which governed the operation of a nursing facility in Oklahoma; and, (b) operate and provide required services in accordance with

17

accepted professional standards for the provision of medical, nursing and related services to its residents.

57.     The afore-stated rules and regulations promulgated by the Oklahoma State Department of Health were: (a) designed to establish minimum standards of nursing home care for residents in the state of Oklahoma; (b) specifically created to protect a class of persons to which Decedent was a member; (c) intended to prevent the death of Decedent that was occasioned by nursing home neglect; and (d) required by statute to be complied with on an ongoing basis by nursing homes such as **Defendant nursing home** .

58.     Accordingly, at all times material to this lawsuit, **Defendants** were required to conform their conduct and exercise that care prescribed by law and regulation to protect the health and safety of nursing home residents and patients such as Decedent.

59.     As detailed below, Defendants, including **Defendant nursing home violated** state laws and regulations designed for the protection and safety of nursing home residents like Decedent and are, therefore, negligent *per se*. More particularly, said Defendants were negligent *per se* in at least one or more of the following respects by:

    a.     violating OKLA. ADMIN. CODE 310:675-9-1.1 by failing to provide Decedent with basic nursing and personal care;

    b.     violating OKLA. ADMIN. CODE 310:675-13-5(d) by failing to employ licensed nurses for a sufficient number of hours to meet the needs of residents, including Decedent;

    c.     violating OKLA. ADMIN. CODE 310:675-13-5(a) by failing to provide an organized and staffed nursing facility competent and capable of providing nursing and health-related services on a continuous basis to residents including Decedent;

    d.     violating OKLA. ADMIN. CODE 310:675-9-5.1(a) and (c)(3) in failing to accurately indicate Decedent's needs and current status in his care plan as required by law as well as failing to implement, comply with and update such care plan;

18

e.     violating OKLA. ADMIN. CODE 310:675-7-10.1(a) and (j) by failing to create for the safety and well-being of Decedent an accurate clinical record which contained important clinical documentation required by law;

60.     Decedent's injuries, pain, suffering, and death were a direct and proximate result of the violations, acts and omissions set forth above, operating singularly or in combination. Furthermore, Plaintiff would show that such violations, acts and omissions set forth above, operating singularly or in combination, were direct and proximate causes of the damages described more fully herein.

WHEREFORE, Plaintiff seeks compensatory, actual and punitive damages described below, which are incorporated herein for purposes of this *Count*, plus cost of suit, and all other relief to which Plaintiff is entitled by law.

## COMPENSATORY, ACTUAL AND PUNITIVE DAMAGES

61.     Plaintiff re-alleges and incorporates the allegations above as if fully set forth herein.

62.     As a direct and proximate result of the acts or omissions of Defendants as set forth above, Decedent suffered, until Decedent's premature death, mental anguish, pain, suffering, physical injuries, extreme physical impairment and other subsequent complications and injuries.

63.     As a further direct and proximate result of Defendants' conduct, Decedent required medical attention and hospitalization, and incurred liability to pay reasonable and necessary charges for such.

64.     As a direct, natural and proximate result of the acts or omissions of Defendants as set forth above, Decedent died, thereby incurring reasonable and necessary charges for funeral, administration and related expenses.

65.     As a direct and proximate result of the previously alleged conduct, all of which was negligent, grossly negligent, willful and wanton, outrageous, reckless, malicious, intentional, and/or threatening to human life, Decedent was caused to endure pain, suffering, permanent injury, and death. Indeed, Decedent suffered personal injury including pain and suffering, mental anguish, emotional distress, extreme physical impairment, and destruction of dignity until death.

66.     The scope and severity of Defendants' consciously indifferent actions with regard to the welfare and safety of helpless residents such as Decedent constitute gross negligence, willful, wanton, oppressive, reckless, malicious and/or intentional misconduct as such terms are understood in law.

67.     Such conduct was undertaken by Defendants without regard to the health and safety consequences to those residents, such as Decedent, entrusted to their care. Moreover, such conduct evidences such little regard for their duties of care, good faith, and fidelity owed to Decedent as to raise a reasonable belief that the acts and omissions by Defendants set forth above were the result of conscious, willful, malicious, and intentional conduct for Decedent's rights and welfare for which Plaintiff seeks punitive damages.

68.     Additionally, pursuant to OKLA. STAT. tit. 12, § 1053, due to the consequences of Defendants' misconduct, the Wrongful Death Survivors of the Decedent have suffered grief, loss of companionship, attention, guidance, care, protection, training, consortium, cooperation, affection and love. Accordingly, Plaintiff asserts a claim for past and future damages arising from such events. Plaintiff is entitled to an award for the full value of the life of the decedent, Decedent, and for the mental anguish he and his family experienced in the past and will experience in the future from the catastrophic, permanent, and foreseeably fatal injuries

20

inflicted by Defendants and endured by Decedent. By reason thereof, Plaintiff, in a representative capacity, is entitled to recover against Defendants compensatory, actual and punitive damages based on the foregoing.

69.     Plaintiff seeks a judgment against Defendants for all compensatory, actual and punitive damages which the law allows and which the Court and which the Jury deems just and fair under the facts of this case, plus costs of suit, and any other relief to which Plaintiff is entitled by law.

70.     Pursuant to the general rules of pleading, OKLA. STAT. tit. 12, § 2008, Plaintiffs assert that the amount sought as damages for claims set forth herein is in excess of seventy-five thousand dollars ($75,000).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

For judgment against all Defendants for actual and compensatory damages for the injuries to and death of Decedent, including but not limited to damages for physical injuries, mental pain and anguish, loss of enjoyment, funeral and burial expenses, and expenses for medical care and treatment, all in an amount in excess of $75,000.00

a.  For judgment against all Defendants for the mental anguish, sorrow and grief, and loss of love, affection, comfort, emotional and pecuniary support, and companionship, consortium and burial expenses;

b.  For judgment against all Defendants for punitive damages in an amount in excess of $75,000.00;

c.  For judgment against all Defendants for prejudgment interest, post-judgment interest, and costs of suit; and

21

d. For such other relief as may be just and equitable.

Respectfully submitted,

Mark A. Cox OBA #13630
Law Office of Mark A. Cox, PLLC
15401 N. May Ave., Suite 400
Edmond, Oklahoma 73013
T(405)285-5444 F(405)293-8881
Mark@MarkCoxLaw.com